IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLINTON J. SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, COUNTY OF DUNDY BOARD OF COMMISSIONERS, DUNDY COUNTY ATTORNEY, DUNDY COUNTY CLERK, SCOTT OLSON, Individually and in his official capacity; AARON KEISER, Individually and in his official capacity; TOM RICHARDS, Individually and in his official capacity; ARLAN WINE, Individually and in his official capacity; MILES PRESTON, Individually and in his official capacity; NEBRASKA LAW ENFORCEMENT TRAINING CENTER, NEBRASKA POLICE STANDARDS ADVISORY COUNCIL, JERRY FRIES, LESTER BEALL, and ED BORCHARD,<br><br>Defendants. | 4:23CV3211<br><br>**MEMORANDUM AND ORDER** |

On November 8, 2023, Plaintiff Clinton J. Smith filed a Complaint, Filing No. 1, Motion for Leave to Proceed in Forma Pauperis ("IFP"), Filing No. 2, and what the Court docketed as a Motion for Emergency Injunction, Filing No. 3. Plaintiff subsequently filed a Supplement to Motion for Emergency Injunction on November 13, 2023. Filing No. 6. Thereafter, on November 16, 2023, Plaintiff filed an Amended Motion for Temporary Restraining Order, Filing No. 7, which the Court construes as a motion to file an amended complaint, and two "Supplement Order[s] to Show Cause," Filing No. 8; Filing No. 9. On November 17, 2023, the Court entered a Text Order taking Plaintiff's IFP Motion under advisement pending the Court's investigation of Plaintiff's IFP affidavit's

1

sufficiency. Filing No. 17, Text Order. Plaintiff filed an Objection, Filing No. 11, on February 12, 2024, asking the Court to approve his IFP application and progress this matter.

The Court has completed its investigation of Plaintiff's IFP affidavit and, upon review of Plaintiff's IFP Motion, finds that Plaintiff, a non-prisoner, is financially eligible to proceed in forma pauperis. Accordingly, Plaintiff's IFP Motion is granted, and his Objection is denied as moot. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). For purposes of this initial review, the Court will grant Plaintiff's Amended Motion for Temporary Restraining Order, Filing No. 7, to the extent that Plaintiff is granted leave to amend his complaint and the signed pleading contained in Filing No. 7 shall be considered the Amended Complaint and the operative pleading. *See* Fed. R. Civ. P. 15(a).

## I. SUMMARY OF AMENDED COMPLAINT

When he filed his original Complaint on November 8, 2023, Plaintiff was the elected Sheriff of Dundy County, Nebraska. Filing No. 1 at 1, ¶ 1. Plaintiff was removed from office on November 14, 2023, as the result of a recall election. Filing No. 7 at 9, ¶ 61. He brings this action pursuant to 42 U.S.C. § 1983 against the State of Nebraska, the Nebraska Law Enforcement Training Center ("NLETC"), the Nebraska Police Standards Advisory Council ("PSAC"), various Dundy County officials and the offices they occupy, and three individual residents and citizens of Dundy County, Nebraska, for, *inter alia*, alleged violations of the Fourteenth, Fifth, and Eighth Amendments of the United States Constitution.

On February 7, 2022, Plaintiff was placed on the ballot of the Dundy County primary elections for the position of Sheriff of Dundy County, Nebraska after completing the required background check and Test of Adult Basic Education through the NLETC. Filing No. 7 at 5, ¶¶ 29–30; *see* Neb. Rev. Stat. § 23-1701.01(1). Plaintiff won the primary election in May 2022, followed by the general election in November 2022 to become the Sheriff-Elect of Dundy County, Nebraska. Filing No. 7 at 5–6, ¶¶ 31, 33. Plaintiff was sworn in as the Dundy County Sheriff on January 5, 2023. *Id.* at 6, ¶ 34.

In February 2023, Plaintiff submitted his background investigation packet for admittance into the NLETC on a reciprocity basis per Neb. Rev. Stat. § 23-1701.01, which provides in relevant part:

> Each sheriff shall attend the Nebraska Law Enforcement Training Center and receive a certificate attesting to satisfactory completion of the Sheriff's Certification Course within eight months after taking office unless such sheriff has already been awarded a certificate by the Nebraska Commission on Law Enforcement and Criminal Justice attesting to satisfactory completion of such course or unless such sheriff can demonstrate to the Nebraska Police Standards Advisory Council that his or her previous training and education is such that he or she will professionally discharge the duties of the office.

Neb. Rev. Stat. § 23-1701.01(2). *See* Filing No. 7 at 6, ¶ 35. Plaintiff attended an in-person background investigation interview at the NLETC and, on April 3, 2023, received notice he was accepted into the NLETC pending a physical fitness test. *Id.*, ¶¶ 36–37. On April 11, 2023, Plaintiff received notice that he did not pass the physical fitness test. *Id.*, ¶ 39. Plaintiff communicated with now former NLETC Director Brenda Urbanik ("Urbanik") who informed Plaintiff he could attend a hearing before the PSAC on April 19, 2023, to request a waiver of extension to retry the physical fitness test. *Id.* Urbanik later notified Plaintiff that his appearance before the PSAC would have to be

3

rescheduled, first to May 17, 2023, and then later to June 21, 2023. *Id.*, ¶¶ 40–41. Urbanik then retired on June 2, 2023, and Mark Stephenson ("Stephenson") became the NLETC Interim-Director on June 5, 2023. *Id.* at 6–7, ¶¶ 42–43.

On June 5, 2023, Stephenson signed a letter of denial to Plaintiff for entry into the NLETC. *Id.* at 7, ¶ 43. Defendant Dundy County Clerk Miles Preston ("Clerk" or "Preston") signed a receipt for the letter on June 8, 2023, and texted Plaintiff that he had received a certified letter from the NLETC. Plaintiff, however, did not receive the letter until June 12, 2023, as he was out of the office to attend training sponsored by the Dundy County Sheriff Office and Clerk did not leave the letter with Dundy County Communications as Plaintiff had instructed. *Id.*, ¶¶ 44–46. Upon reading the denial letter, Plaintiff learned that June 12, 2023, was his last day to notify NLETC of an appeal. *Id.*, ¶ 46. Plaintiff did not respond to the letter "[d]ue to the lacking description of the nature of the denial" and lack of "time to return mail." *Id.* On June 22, 2023, Plaintiff received a certified letter from the NLETC stating the denial decision would stand and Plaintiff could attend the "good cause" hearing at the PSAC meeting on September 20, 2023. *Id.*, ¶ 47.

On July 14, 2023, Defendant Jerry Fries ("Fries"), a Dundy County resident, requested a recall petition for Plaintiff's position as Dundy County Sheriff "with the stated reason for recall as, 'Said he was certified in Colorado. He was not. Never was. Is denied entry into the NLETC. Therefore he cannot be certified.'" *Id.*, ¶ 48. On September 7, 2023, Fries returned the petitions to Clerk with sufficient signatures for a recall election. *Id.* at 8, ¶ 52. Defendants Lester Beall ("Beall") and Ed Borchard ("Borchard") are alleged to be Dundy County residents and volunteer circulators of the

4

recall election petitions against Plaintiff. *Id.* at 3–4, ¶¶ 14–15. The recall election of Plaintiff was set for, and held on, November 14, 2023. *Id.* at 8–9, ¶¶ 55, 61.

On September 5, 2023, Plaintiff alleges the County of Dundy Board of Commissioners, comprised of Chairman Scott Olson "(Olson") and members Aaron Keiser ("Keiser") and Tom Richards ("Richards") (collectively the "Board"), after discussions with the Dundy County Attorney Arlan Wine ("Counsel" or "Wine"), voted to not pay Plaintiff his salary for the month of September as a fine for failure to gain certification through the NLETC within eight months of becoming Sheriff as required by Neb. Rev. Stat. § 23-1701.01. Filing No. 7 at 7–8, ¶¶ 49, 51. The Board denied Plaintiff's payroll claim request on September 18, 2023, and Dundy County Clerk Preston did not process Plaintiff's salary for payroll deposits for September. *Id.*, ¶¶ 50, 53. The same occurred with respect to Plaintiff's salary for the months of October and November. *Id.* at 8, ¶¶ 56–58, 60.

The good cause hearing before the PSAC was rescheduled from September 20, 2023, to October 25, 2023, after "the PSAC, Nebraska Attorney General's Office, and NLETC had agreed to give more time to prepare for the hearing." *Id.* at 8, ¶ 54. Plaintiff attended the PSAC hearing of "good cause" at the NLETC in Grand Island, Nebraska, on October 25, 2023. The PSAC voted to uphold the denial of the NLETC in their administrative hearing "based on allegations which were used by NLETC staff to make their determination [of] allegations against Plaintiff." *Id.*, ¶ 59.

Based on these events, Plaintiff seeks declaratory and injunctive relief declaring that the defendants violated his due process rights by delaying his certification and seizing his salary as a fine; declaring the sheriff certification and recall elections

statutes, Neb. Rev. Stat. § 23-1701.01 and Neb. Rev. Stat. § 32-1302, respectively, unconstitutional; restoring Plaintiff to his elected position; requiring the NLETC to grant Plaintiff a waiver of training requirements based on his previous training and certifications; and preventing the Board from fining Plaintiff for non-certification. Plaintiff also seeks compensatory damages in the form of backpay and benefits, as well as punitive damages. Id. at 17–19.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. See 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569-70 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (quoting Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally

6

construed, and pro se litigants are held to a lesser pleading standard than other parties." Topchian, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 asserting eight causes of action[1] based on alleged violations of his rights under the Fourteenth, Fifth, and Eighth Amendments of the United States Constitution, and violations of Article I, § 3 and Article III, §§ 18 and 19 of the Nebraska Constitution.[2]  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). For the reasons that follow, Plaintiff's claims cannot proceed against several of the defendants and his Complaint fails to allege a plausible claim upon which relief may be granted.

**A. Proper Defendants**

Plaintiff sues the State of Nebraska, the PSAC, and the NLETC.  The PSAC is a special standing committee of the Nebraska Commission on Law Enforcement and

---

[1] Plaintiff includes a "ninth cause of action" which the Court construes as a request for immediate injunctive relief, rather than a separate cause of action.  Filing No. 7 at 16–17.

[2] In his Amended Complaint, Plaintiff abandoned his claim from his original Complaint that the actions of the Board, Clerk, and Counsel violate "Article XXVIII Section 1 Amendment 20 of the United States Constitution as it reads: All elected state officials shall each severally receive such compensation as the legislature may direct.  The compensation of any state officer shall not be increased or diminished during his term of office." Filing No. 1 at 7, ¶ 73.  This provision is not part of the United States Constitution but rather appears to be the former language of Article XXVIII, § 1 of the Washington State Constitution, which was amended in 1986 to its current version.  Wash. Const. art. XXVIII, § 1 (as amended by Amendment 78, Nov. 4, 1986); *State ex rel. O'Connell v. Yelle*, 51 Wash. 2d 594, 595–96, 320 P.2d 1079, 1080 (Wash. 1958) (quoting former Art. XXVIII, amendment 20, § 1).  Regardless, such provision is inapplicable here and cannot serve as a basis for relief under § 1983.

Criminal Justice, which is a state agency. Neb. Rev. Stat. § 81-1406; Neb. Rev. Stat. § 81-1416. The NLETC is a statutorily-created division of the Commission under the supervision and control of the PSAC which, among other purposes, tests law enforcement candidates "to ensure they meet pre-certification and certification requirements." Neb. Rev. Stat. § 81-1402; *see also* Filing No. 7 at 2, ¶ 6. States or governmental entities that are considered arms of the state, such as the PSAC and the NLETC, are not suable "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), and suits against the state or its agencies are barred by the Eleventh Amendment. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars suit against state agency for any kind of relief); *Nix v. Norman*, 879 F.2d 429, 431–32 (8th Cir.1989) (suit brought solely against state or state agency is proscribed by Eleventh Amendment); *see also Brown v. Arkansas Dep't of Human Servs.*, 452 F. App'x 690, 693 (8th Cir. 2011) (unpublished) (plaintiff's § 1983 claims against state agency barred by Eleventh Amendment). Accordingly, the State of Nebraska, the PSAC, and the NLETC must be dismissed for failure to state a claim against them upon which relief can be granted.

In addition, Plaintiff's § 1983 claims may not proceed against Defendants Fries, Beall, and Borchard as Plaintiff has alleged no facts demonstrating that these defendants acted under color of state law within the meaning of 42 U.S.C. § 1983. To state a cognizable claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused or committed by a person acting under color of state law. *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). Even reading Plaintiff's Amended

Complaint liberally, Plaintiff alleges only that Fries, Beall, and Borchard are private citizens who exercised their right to initiate and participate in the recall petition process. See Neb. Rev. Stat. § 32-1303. Plaintiff's allegations fail to establish that Fries, Beall, and Borchard are state actors, and his § 1983 claims against them must, therefore, be dismissed. See *Smith v. Winter*, 782 F.2d 508, 512 (5th Cir. 1986) (finding state official's actions in initiating recall petitions was not done under color of state law "[b]ecause all citizens have the right to initiate recall petitions under [state] law"); *Habecker v. Town of Estes Park, Colorado*, 452 F. Supp. 2d 1113, 1131–32 (D. Colo. 2006), *aff'd sub nom. Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217 (10th Cir. 2008) ("As private citizens, Committee Defendants' decision to petition Plaintiff Habecker's recall from office was quite patently private action. The fact that Committee Defendants designated themselves as a recall committee, as required by Colorado law, does not convert the act of petitioning a recall into state action.") (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 951 (1982) (Powell, J., dissenting) (a private party's mere invocation of state legal procedures does not satisfy section 1983 state action requirement)).

Plaintiff also names the Board, the Dundy County Attorney, and the Dundy County Clerk as defendants. Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b). While each county in Nebraska may sue and be sued in its own name, Neb. Rev. Stat. § 23-101, the same is not true of county offices or departments. See *Winslow v. Smith*, 672 F. Supp. 2d 949, 964 (D. Neb. 2009) (Gage County Sheriff's Office was not proper defendant); *Holmstedt v. York County Jail*

9

*Supervisor (Name Unknown)*, 739 N.W.2d 449, 461 (Neb. App. 2007) (York County Sheriff's Department was not proper defendant), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008); *see also Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such"). Accordingly, the Court will dismiss the "County of Dundy Board of Commissioners," "Dundy County Attorney," and "Dundy County Clerk" as parties as they are duplicative of the official capacity claims against Olson, Keiser, Richards, Wine, and Preston, who are the Dundy County officials occupying the Board, County Attorney, and County Clerk positions. *See* Fed. R. Civ. P. 17(d).

Thus, the remaining defendants are Board Chairman Olson, Board members Keiser and Richards, County Attorney Wine, and County Clerk Preston, who are all sued in their individual and official capacities (collectively "Defendants"). Plaintiff's claims against each of the individual Defendants in their official capacities are properly construed as claims against Dundy County itself. *Elder Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city . . . ."). "A municipality may be liable under § 1983 where 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Graham v. Barnette*, 5 F.4th 872, 890 (8th Cir. 2021) (citation omitted). As explained below, Plaintiff has failed to state a claim for relief against these Defendants in either their individual or official capacities.

10

**B. Third Cause of Action: Fifth Amendment**

In his third cause of action, Plaintiff alleges a due process claim under the Fifth Amendment to the United States Constitution. Filing No. 7 at 11–12, ¶¶ 68–70. However, "[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions," and Plaintiff has not alleged that Defendants are federal officials. See *Barnes v. City of Omaha*, 574 F.3d 1003, 1006 (8th Cir. 2009) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"), and *Junior Chamber of Commerce of Kansas City, Mo. v. Mo. State Junior Chamber of Commerce*, 508 F.2d 1031, 1033 (8th Cir. 1975) (recognizing that a "federal action" is necessary "before there is any deprivation of due process in violation of the fifth amendment")). "Thus, the proper claim is that the defendants violated [Plaintiff's] Fourteenth Amendment due process rights, not [his] Fifth Amendment due process rights." *Cambara v. Schlote*, No. 8:14-CV-260, 2015 WL 5775766, at *6 (D. Neb. Sept. 30, 2015) (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir.2010)). Accordingly, Plaintiff's Fifth Amendment claims in his third cause of action are dismissed.

**C. Fifth, Sixth, Seventh, and Eighth Causes of Action: State Law § 1983 Claims**

In his fifth, sixth, seventh, and eighth causes of action, Plaintiff asserts claims under 42 U.S.C. § 1983 based on violations of Article I, § 3 and Article III, §§ 18 and 19 of the Nebraska Constitution. Filing No. 7 at 13–16. However, "'[a]lleged violations of state laws, state agency regulations, and even state court orders do not by themselves

state a claim under 42 U.S.C. § 1983.'" *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005) (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1312 (8th Cir. 1997)). Thus, to the extent Plaintiff attempts to bring independent section 1983 claims on the basis that the Defendants violated provisions of the Nebraska Constitution, such claims must be dismissed.

**D. Fourth Cause of Action: Eighth Amendment**

Plaintiff alleges in his fourth cause of action that the Board, Clerk, and Counsel imposed excessive fines against him in violation of the Eighth Amendment when they did not pay him his salary pursuant to Neb. Rev. Stat. § 23-1701.01(4), which provides that unless a sheriff is able to show good cause for not complying with § 23-1701.01(2) requiring satisfactory completion of the Sheriff's Certification Course within eight months of taking office or obtains a waiver of the training requirements from the PSAC, "any sheriff who violates subsection (2) . . . of this section shall be punished by a fine equal to such sheriff's monthly salary. Each month in which such violation occurs shall constitute a separate offense." Neb. Rev. Stat. § 23-1701.01(4). *See* Filing No. 7 at 12, ¶¶ 71–73.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has held that the Excessive Fines Clause of the Eighth Amendment applies not only to criminal sanctions, but to civil assessments that are punitive in nature. *Austin v. United States*, 509 U.S. 602, 610 (1993) (explaining the relevant inquiry is not whether the assessment is criminal or civil, "but rather whether it is punishment."). Here, § 23-1701.01(4) specifically states that a sheriff who fails to

12

comply with the requirements of § 23-1701.01(2) "shall be punished" by imposition of a fine equal to the sheriff's monthly salary. Thus, the Court assumes that the fines imposed under § 23-1701.01(4) are subject to the Eighth Amendment's limitations.

"To determine whether a fine runs afoul of the Eighth Amendment, the Supreme Court has explained that, 'The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.'" *Bettor Racing, Inc. v. Nat'l Indian Gaming Comm'n*, 47 F. Supp. 3d 912, 937 (D.S.D. 2014), *aff'd*, 812 F.3d 648 (8th Cir. 2016) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). The Court adopted "the standard of gross disproportionality articulated in [its] Cruel and Unusual Punishment Clause precedents," and, with it, established two prudential considerations: first, "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and second, "that any judicial determination regarding the gravity of a particular [offense] will be inherently imprecise." *Bajakajian*, 524 U.S. at 336. The Supreme Court declined to adopt a bright line test to determine whether a particular fine may be grossly disproportionate and left that task to the lower courts. *Austin*, 509 U.S. at 622–23.

> Responding to the Supreme Court's guidance, the Eighth Circuit has adopted a two-pronged test to determine whether an assessment is constitutionally infirm. The first prong requires the challenger to "mak[e] a prima facie showing of 'gross disproportionality.'" *Wentworth Ave.*, 123 F.3d [685,] 688[ (8th Cir. 1997)] (quoting *United States v. Bieri*, 68 F.3d 232, 236 (8th Cir.1995)). If the challenger meets its initial burden, the court then considers whether the disproportionality "reach[es] such a level of excessiveness that in justice the punishment is more criminal than the [offense]." *Id*. A number of factors are considered to aid the court's determination of whether a fine is "grossly disproportional," such as the duration of the conduct that led to the fine, the gravity of the offense versus the severity of the sanction, and the value of what was forfeited. *United States v. Dodge Caravan*, 387 F.3d 758, 763 (8th Cir.2004) (citing *Bieri*, 68 F.3d at 236). Additionally, a court should consider the benefit

13

gained by the offending party, that party's motive and culpability, and the extent to which that party's "interest and the enterprise itself are tainted" by the unlawful conduct. *Id.* There may be other factors to consider, and not all factors may apply to a given case, thus the Eighth Circuit has acknowledged that this inquiry is dependent on the facts before the court. *Id.* Nonetheless, if a fine is near or within the permissible statutory range, it "almost certainly is not excessive." *United States v. Moyer*, 313 F.3d 1082, 1086 (8th Cir.2002) (citing *United States v. Sherman*, 262 F.3d 784 (8th Cir.2001) *vacated but reinstated by United States v. Diaz*, 296 F.3d 680 (8th Cir.2002) (en banc)).

*Bettor Racing, Inc.*, 47 F. Supp. 3d at 937.

Applying the foregoing standards here, the Court concludes that Plaintiff has failed to allege facts demonstrating a prima facie showing of gross disproportionality. The fine imposed by Defendants is precisely the fine contemplated and provided for in Neb. Rev. Stat. § 23-1701.01(4). The Nebraska Legislature has determined that a sheriff who fails to show good cause for his or her failure to receive the necessary certification from the NLETC shall be punished by imposition of a fine equal to the sheriff's monthly salary for each month in which the sheriff is in violation of the certification requirements. As the Supreme Court has said, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336. And the Nebraska Legislature's determination of the appropriate punishment in this situation makes logical sense as a sheriff who is not properly certified as required by state law is not qualified to hold the position of sheriff.

Upon consideration, the Court finds that Plaintiff's allegations fail to state a claim that the penalty imposed upon Plaintiff pursuant to Neb. Rev. Stat. § 23-1701.01(4) violates the Eighth Amendment. This claim is dismissed.

E.  **First and Second Causes of Action: Fourteenth Amendment Due Process**

In his first and second causes of action, Plaintiff alleges Defendants deprived him of due process in violation of the Fourteenth Amendment when they used Neb. Rev. Stat. § 23-1701.01(4) to withhold payment of his salary, Filing No. 7 at 9–10, ¶¶ 63–65, and when they applied the recall election provisions of Neb. Rev. Stat. § 32-1302 to Plaintiff "by virtue of arbitrary and capricious delays by the NLETC and PSAC collectively[ i]n failing to provide a sufficient and expedient form of due process before Plaintiff had reached the limitations brought forth in Neb. Rev. Stat. [§] 23-1701.01," Filing No. 7 at 10–11, ¶¶ 66–67.

"The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" Jenner v. Nikolas, 828 F.3d 713, 716 (8th Cir. 2016) (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." Id. (citing Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" Booker v. City of Saint Paul, 762 F.3d 730, 734 (8th Cir. 2014) (quoting Coleman v. Watt, 40 F.3d 255, 260 (8th Cir. 1994)). "The most important mechanisms for ensuring that due process has been provided are 'notice of the factual basis' leading to a deprivation and 'a fair opportunity for rebuttal.'" Senty-Haugen v. Goodno, 462 F.3d 876, 888 (8th Cir. 2006) (quoting Wilkinson v. Austin, 545 U.S. 209, 226 (2005)); see also Memphis Light, Gas &

15

*Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"). A plaintiff is entitled to due process only when a protected property or liberty interest is at stake. *See Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir.1999).

Liberally construed, Plaintiff alleges his right to procedural due process was violated when he was deprived of his property interest in his salary and to continue in his position as Dundy County Sheriff free from the threat of a recall election. However, the Court concludes Plaintiff has no protected property interest in his elected position as Dundy County Sheriff nor his expected salary.

> "A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir.1994), *cert. denied*, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). The property interest is determined with reference to State law, and generally stems from contractual or statutory limitations on the employer's ability to terminate an employee. *Id.*, citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In *Taylor v. Beckham*, 178 U.S. 548, 576–77, 20 S.Ct. 890, 44 L.Ed. 1187 (1900), the Supreme Court noted that "[t]he view that public office is not property has been generally entertained in this country," and the fact that a statute or legislation may forbid the legislature from abolishing a public office, or reducing its salary, does not make such a position property. See also, *Snowden v. Hughes*, 321 U.S. 1, 7, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Velez v. Levy*, 401 F.3d 75, 85–87 (2d Cir.2005), citing cases; *Sherer v. Carlson*, 141 F.3d 1179, 1998 WL 133098 at * 1 (9th Cir.1998)[Table Decision]; *cf.*, *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.1979).

*Franzwa v. City of Hackensack*, 567 F. Supp. 2d 1097, 1104–05 (D. Minn. 2008). In short, "[t]here is no constitutional right to be elected to a particular office." *Id.* (quoting *Parks v. City of Horseshoe*, 480 F.3d 837, 840 (8th Cir.2007)).

As the Nebraska Supreme Court has held, "[i]n the creation of an office by the Legislature, it may impose such limitations and conditions as to its continuance and termination as it sees fit, and in such a case the incumbent takes the office subject to the conditions imposed." *State ex rel. Topping v. Houston*, 94 Neb. 445, 143 N.W. 796, 796 (1913). Plaintiff assumed the office of Dundy County Sheriff subject to the state statutory requirements of certification, the penalties for failing to obtain such certification, as well as the possibility of his removal pursuant to a recall election. *See* Neb. Rev. Stat. § 23-1701.01; Neb. Rev. Stat. § 32-1302. Nothing in Nebraska state law and nothing alleged in the Complaint suggests to the Court that Plaintiff had a protected property interest in his position as sheriff that would entitle him to the due process protections he claims.[3] Accordingly, the Court finds that Plaintiff's due process claims must be dismissed.

### IV.  PENDING MOTIONS FOR IMMEDIATE INJUNCTIVE RELIEF

With his original Complaint, Plaintiff filed what the Court has docketed as a Motion for Emergency Injunction asking for "review and response of case by end of day 13 November, 2023" and an "immediate temporary injunction" of the recall election on November 14, 2023, and "to reinstate and reimburse Plaintiff's salary." Filing No. 3.

---

[3] The Court also notes that, as alleged in the Amended Complaint and Plaintiff's supplemental Order to Show Cause, Plaintiff did receive notice of NLETC Director Stephenson's denial of Plaintiff's entry into the NLETC "based on broad accusations and information from his background interview," Filing No. 8 at 3, ¶ 11, and an opportunity to be heard at the good cause hearing before the PSAC. Filing No. 7 at 7–8, ¶¶ 43, 46–47, 54, 59. While Plaintiff complains about the delay in receiving this hearing, Plaintiff alleges no facts suggesting how such process was inadequate. The process Plaintiff received appears to be in conformity with Nebraska regulations governing the NLETC and PSAC. *See* 79 Neb. Admin. Code, Ch. 13, § 004.02. Moreover, final decisions of the PSAC are reviewable by Nebraska state courts under the Administrative Procedure Act. *See* Neb. Rev. Stat. § 84-917; *Swicord v. Police Standards Advisory Council*, 958 N.W.2d 388 (Neb. 2021) (affirming district court's decision pursuant to Administrative Procedure Act upholding PSAC's decision denying officer's reciprocity certification).

17

Subsequently, on November 13, 2023, Plaintiff filed a Supplemental Motion, again asking for expedient review of his case. Filing No. 6.

The standards set forth by Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109 (8th Cir. 1981), apply to a motion for injunctive relief. In Dataphase, the Eighth Circuit, sitting *en banc*, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest. Id. at 114. Given the Court's conclusion that Plaintiff's Complaint fails to state a plausible claim for relief against any of the defendants, the Court will deny Plaintiff's motions for immediate injunctive relief as moot.

## V. CONCLUSION

Plaintiff has failed to allege cognizable claims under 42 U.S.C. § 1983 against the State of Nebraska, the PSAC, the NLETC, Fries, Beall, and Borchard, and those defendants must be dismissed as parties to the action. Additionally, the Court must dismiss the "County of Dundy Board of Commissioners," "Dundy County Attorney," and "Dundy County Clerk" as parties to this action as they are not proper parties subject to suit and any claims against these parties are duplicative of Plaintiff's claims against the named Dundy County officials in their official capacities. All of Plaintiff's remaining claims against Olson, Keiser, Richards, Wine, and Preston in their individual and official capacities are dismissed for failure to state a claim upon which relief may be granted. The Court finds that dismissal of Plaintiff's federal § 1983 claims with prejudice is

18

appropriate as the Court concludes the defects in the Complaint cannot be remedied by further pleading. However, the Court will dismiss this action without prejudice to any state law claims Plaintiff may have arising out of the facts alleged in the Complaint.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Leave to Proceed in Forma Pauperis, Filing No. 2, is granted, and the Complaint shall be filed without payment of fees.

2. Plaintiff's Amended Motion for Temporary Restraining Order, Filing No. 7, construed as a motion to amend the Complaint pursuant to Fed. R. Civ. P. 15(a), is granted to the extent that Plaintiff is granted leave to amend his complaint and the signed pleading contained in Filing No. 7 shall be considered the Amended Complaint and the operative pleading.

3. The Clerk of the Court is directed to update the docket text for Filing No. 7 to identify the filing as the "Amended Complaint."

4. Pursuant to 28 U.S.C. § 1915(e)(2), and for the reasons in this Memorandum and Order, this matter is dismissed with prejudice as to Plaintiff's federal-law claims under 42 U.S.C. § 1983 and without prejudice as to any state law claims Plaintiff may have.

5. Plaintiff's pending Motion for Emergency Injunction, Filing No. 3, Supplemental Motion, Filing No. 6, and Objection, Filing No. 11, are denied as moot.

6. The Court will enter judgment by a separate document.

Dated this 27th day of June, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge